IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

**RICKY FREEMAN and BRENDA FAYE HUNTER,**

        **Plaintiffs,**

v.                                                           Case 2:11-cv-02424-SHM-cgc

**LAQUITA SULLIVAN** (Section 8, Memphis Housing Authority), **REGINA FISHER** (Eligibility Specialist, Memphis Housing Authority), **ROBERT LIPSCOMB** (Director, Memphis Housing Authority), **MEMPHIS HOUSING AUTHORITY** (a corporation), **ADRENA JAMES** (Memphis Housing Authority), **CARLOS OSEGUEDA** (Director, U.S. Department of Housing and Urban Development), **TURNER RUSSELL** (Director, Office of Enforcement/FHEO, U.S. Department of Housing and Urban Development), **U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT OFFICE OF ENFORCEMENT/ FHEO** (a corporation)**, LYNN GROSSO** (Director, Office of Enforcement/FHEO, U.S. Department of Housing and Urban Development)**, and GREGORY BERNARD KING** (Civil Rights Analyst/ Conciliator, U.S. Department of Housing and Urban Development),

        **Defendants.**

### REPORT AND RECOMMENDATION ON DEFENDANTS ROBERT LIPSCOMB, LAQUITA SULLIVAN, AND REGINA FISHER'S MOTION TO DISMISS

Before the Court is Defendants Robert Lipscomb, LaQuita Sullivan, and Regina Fisher's Motion to Dismiss filed pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Docket Entry "D.E." #23). This motion was referred to the United States Magistrate

1

Judge (D.E. #35) for Report and Recommendation pursuant to 28 U.S.C. Section 636(b)(1)(B)-(c). For the reasons set forth herein, the Magistrate Judge RECOMMENDS that Defendants' Motion to Dismiss be GRANTED.

**I. Background**

On May 27, 2011, Plaintiffs filed a pro se Complaint alleging claims of housing discrimination. On February 10, 2012, Plaintiffs filed a pro se Amended Complaint (D.E. #8), which the District Court has determined to be the operative pleading in this case. (D.E. #14). The Amended Complaint[1] includes the following documents: (1) "Complaint Information" signed by Plaintiff Freeman; (2) "Complaint Information" signed by Plaintiff Hunter; (3) "Complaint" signed by Plaintiff Freeman and Plaintiff Hunter; (4) "Supporting Documents" as to Plaintiff Freeman; and, (5) "Supporting Documents" as to Plaintiff Hunter.[2]

Beginning with the allegations made jointly by Plaintiffs in the portions of the Amended Complaint signed by both Plaintiff Freeman and Plaintiff Hunter, Plaintiffs state that they lived in St. Paul, Minnesota but transferred Plaintiff Hunter's Section 8 voucher to Memphis. Plaintiffs arrived in Memphis on August 22, 2006 and met Defendant Sullivan upon their arrival at the

---

[1] It is well-settled that an amended complaint "supersedes" an original complaint. The practice of considering only the operative complaint is not altered for pro se litigants. *See Nancy Ann Ashenhurst-Gallina v. James A. Kandrevas*, No. 08-11464-BC, 2009 WL 1424802, at *4-*5 (E.D.Mich. May 19, 2009). In this case, Plaintiffs do not incorporate by reference the original Complaint; thus, the Court will consider the Amended Complaint, which the District Court has declared to be the operative pleading.

[2] The Amended Complaint's unorthodox collection of documents is inconsistent with Rule 3 of the Federal Rules of Civil Procedure, which requires that a "civil action is commenced by filing *a complaint* with the court." Fed. R. Civ. P. 3. However, the Magistrate Judge will consider the substance of the filings despite this improper form of filing the Amended Complaint.

2

Memphis Housing Authority ("MHA") office. Defendant Sullivan set an initial appointment for Plaintiff Freeman to apply for housing assistance for September 7, 2006, but Plaintiffs state that they needed housing immediately upon their arrival. On August 24, 2006, Plaintiffs made their own arrangements to rent an apartment at New Horizon Apartments in Memphis, Tennessee. Plaintiffs allege that they paid $100.00 for a "rent special" and $100.00 for a security deposit.

At the September 7, 2006 meeting with Defendant Sullivan and Defendant Fisher[3], another MHA employee, Plaintiff Freeman brought an application to obtain housing with his girlfriend, Plaintiff Hunter. Plaintiff Freeman alleges that he wanted to have her on his Section 8 voucher because "she also gets disability for her heart condition, and she's diabetic." Plaintiffs allege that they were told by Defendant Fisher that Plaintiff Hunter could not be included on Plaintiff Freeman's Section 8 voucher and could not live with Plaintiff Freeman. Plaintiffs allege that Defendant Fisher "marked [Plaintiff Hunter's] name off" of his housing application and required Plaintiff Freeman to initial each of these alterations. Plaintiffs further allege that Defendant Sullivan and Defendant Fisher were "saying things behind [their] backs, things with expression" that they could not understand. Plaintiffs allege that Defendant Sullivan asked Plaintiff Freeman when he and Plaintiff Hunter were getting married and "laughed."

Following the meeting, Plaintiffs allege that Defendant Sullivan and Defendant Fisher mishandled and delayed the processing of his paperwork, conspired with New Horizon Apartments, and "worked the system together" to discriminate against them. As a result, Plaintiffs allege that Plaintiff Freeman was required to continue paying rent at New Horizon Apartments from August

---

[3] Defendant Fisher is also referred at various times in the Complaint as "Fischer." However, as the Court's docket reflects the name of "Fisher," the Court will refer to her as such.

24, 2006 until October.[4]

Finally, Plaintiffs allege that Plaintiff Freeman requested "grab bars" in his apartment bathroom due to his scoliosis. Plaintiffs state that New Horizon Apartments and MHA did not provide this accommodation and deny that any such request was made.

Plaintiffs allege that the result of all of these failures was that they suffered discrimination. Plaintiffs allege that the discrimination particularly impacted them because they both have disabilities. None of the portions of Plaintiffs' joint portion of the Amended Complaint cite the legal bases for their claims against Defendant Sullivan, Defendant Fisher, or Defendant Lipscomb or set forth the relief requested.[5]

In addition to the joint allegations, Plaintiff Freeman and Plaintiff Hunter have filed portions of the Amended Complaint that they have each individually signed, which contain similar allegations to the joint allegations. Plaintiff Freeman alleges that Defendant Sullivan failed to allow him to apply for housing with Plaintiff Hunter, delayed processing his Section 8 portability paperwork for "five months," and failed to install grab bars in his apartment bathroom upon request. Plaintiff Freeman alleges that Defendant Fisher delayed the portability paperwork for five months and failed to permit "reasonable modifications to a dwelling." Plaintiff Freeman alleges that Defendant Lipscomb refused to allow Plaintiff Freeman to live with Plaintiff Hunter, that he needed

---

[4] Plaintiffs do not specify the details as to how long they continued to pay rent at New Horizon Apartments other than it continued until "October," as no year is provided along with the month.

[5] Other portions of the Amended Complaint against other Defendants reference violations of Sections 804 of Title VIII of the Civil Rights Act "as amended by the Fair Housing Act of 1988," Section 504 of the 1973 Rehabilitation Act, MHA "rules and regulations," U.S. Housing and Urban Development "rules and regulations," and the "H.U.D. Housing Act."

to live with Plaintiff Hunter to help him move around due to his scoliosis, that Defendant Lipscomb delayed Plaintiff Freeman's portability paperwork for five months in 2006 and for six months in 2009[6], and that Defendant Lipscomb failed to make a "reasonable accommodation." Plaintiff Freeman's individually signed portions of the Amended Complaint do not cite any legal bases for his claims against Defendant Sullivan, Defendant Fisher, or Defendant Lipscomb and do not set forth the relief requested.

In her individually signed portion of the Amended Complaint, Plaintiff Hunter alleges that Defendant Sullivan laughed after asking whether she and Plaintiff Freeman were getting married, that Defendant Sullivan did not allow Plaintiff Hunter to initial portions of Plaintiff Freeman's housing application as part of his household, that Defendant Sullivan required that Plaintiff Freeman "draw a line" across the portions signed of his application signed by Plaintiff Hunter and initial each change, and that Defendant Sullivan "humiliated" her. Plaintiff Hunter alleges that Defendant Fisher also reviewed the MHA policy and advised that Plaintiff Hunter could not be added to Plaintiff Freeman's housing application because they were not married, that Defendant Fisher drew a line through the portions of Plaintiff Freeman's housing application that Plaintiff Hunter signed, and that Defendant Fisher joked, laughed, and "humiliated" her. Plaintiff Hunter alleges that Defendant Lipscomb intentionally delayed the housing paperwork, which forced them to pay full rent for five months. Plaintiff Hunter alleges that it only took one month in Minnesota for the Housing and Urban Development office to begin "paying their portion of the rent." Plaintiff Hunter's individually signed portions of the Amended Complaint do not cite any legal bases for her claims

---

[6] This is the sole reference in any portion of the Amended Complaint to difficulties in 2009. The Amended Complaint does not contain any factual information regarding this alleged delay.

5

against Defendant Sullivan, Defendant Fisher, or Defendant Lipscomb and do not set forth the relief requested.

Plaintiffs additionally have added individual exhibits to the Amended Complaint. Plaintiff Freeman has provided a Notice of Change in Payment from the Social Security Administrate dated November 27, 2011 stating that he will begin receiving $698.00 per month in January, 2012. Plaintiff Freeman also attached a Tenant Rent Allocation Notice from Dakota County Community Development Agency in Eagan, Minnesota, dated November 22, 2011, showing that Plaintiff Freeman and Plaintiff Hunter are both "[a]ssisted household members," that the "contract rent"was $690.00, that the "tenant rental portion" was $387.00, and that the "CDA assisted portion" was $303.00. Plaintiff Hunter also attached a Notice of Change in Payment from the Social Security Administration dated November 27, 2011 stating that she will begin receiving $530.00 per month in January, 2012.

On October 1, 2012, Defendants Lipscomb, Sullivan, and Fisher brought the instant Motion to Dismiss, arguing that the claims against them should be dismissed for the following reasons: (1) Plaintiff Freeman has failed to state a claim for which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure; (2) Plaintiffs Freeman and Hunter's claims against Defendants Lipscomb, Sullivan, and Fisher are official-capacity claims that should be dismissed; and, (3) Plaintiff Hunter does not have standing pursuant to Rule 12(b)(1) or Rule 12(b)(6) to bring her claims. Defendants additionally argue that named defendants Adrena James and Charisse Stewart[7], who have not been served with process and who are not formally represented in this action,

---

[7] Defendants further argue that MHA has not been served with process; however, since the filing of the instant Motion to Dismiss, MHA has been serve with process and has filed its own Motion to Dismiss (D.E. #43). The Magistrate Judge will issue a separate Report and

are not current MHA employees,[8] although Defendants do not specify what relief they would like the Court to grant on this issue. Defendants further argue that a dismissal of the claims against Lipscomb, Sullivan, and Fisher "should operate against all named defendants, including MHA," although MHA had not yet been served when the instant motion was filed.

On October 12, 2012, Plaintiffs filed a "Motion Objecting to the Dismissal of this Case," which the Magistrate Judge recommends be construed as a Response to the instant Motion to Dismiss. (D.E. #36). Plaintiffs argue that Defendants have violated the Housing and Urban Development ("HUD") rules and regulations by requiring them to be married to cohabitate. Plaintiffs restate the remaining alleged violations of the law as follows: (1) refusing to make reasonable accommodations by not installing grab bars at the New Horizon Apartments and the Winbranch Apartments[9]; and, (2) delayed processing of the portability paperwork, which required them to pay "full rent for five months." As an exhibit, Plaintiffs attached a portions of a document entitled "HUD HOUSING PROGRAMS: TENANTS' RIGHTS," including a section entitled, "REJECTING APPLICANTS BASED UPON STATUS OR FAMILIAL COMPOSITION," and Plaintiffs appear to have marked certain portions that they assert apply to their case.[10] Plaintiff further state that James, Stewart and other Defendants were "supposed to have been served."

---

Recommendation on this motion.

[8] Counsel for Defendants Lipscomb, Sullivan, and Fisher state that James is no longer employed by MHA and that Steward has never been employed by MHA.

[9] Winbranch Apartments is not mentioned in any portion of Plaintiffs' Amended Complaint.

[10] Plaintiffs' Response additionally refers to the original Complaint's demand for one million dollars in damages for Plaintiff Freeman and one million dollars in damages for Plaintiff Hunter. As the Magistrate Judge has already explained, *see*, *supra*, n.1, the operative pleading in the instant case is the Amended Complaint.

7

## II. Proposed Legal Standard

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a claim may be dismissed for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A Rule 12(b)(1) motion that attacks jurisdiction based upon the face of the pleading requires that the court accept the non-moving party's allegation of facts as true. *DLX, Inc. v. Kentucky,* 381 F.3d 511, 516 (6th Cir.2004). A Rule 12(b)(1) motion that challenges the factual basis of the court's jurisdiction requires the party asserting jurisdiction bears the burden of establishing it. *Id.* The Court must be satisfied that the jurisdictional and standing requirements are met before addressing the substance of Plaintiff's claims on the merits. *Bell v. Hood*, 327 U.S. 678, 682 (1946).

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a claim may be dismissed for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). In addressing a motion to dismiss under Rule 12(b)(6), the court must construe the complaint in the light most favorable to plaintiff and accept all well-pled factual allegations as true. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). A plaintiff can support a claim "by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007). This standard requires more than bare assertions of legal conclusions. *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361 (6th Cir. 2001). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Any claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . .claim is and the grounds upon which it rests." *Id.* (citing *Twombly*, 550 U.S. at 555).

8

Nonetheless, a complaint must contain sufficient facts "state a claim to relief that is plausible on its face'" to survive a motion to dismiss. *Twombly*, 550 U.S. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 US. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). A plaintiff with no facts and "armed with nothing more than conclusions" cannot "unlock the doors of discovery." *Id.* at 678-79.

Pleadings and documents filed by pro se litigants are to be "liberally construed," and a "pro se complaint, however inartfully pleaded, must be held to a less stringent standard than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, "the lenient treatment generally accorded to pro se litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (citing *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991)). The basic pleading essentials are not abrogated in pro se cases. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) A pro se complaint must still "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Barnett v. Luttrell*, 414 Fed. Appx. 784, 786 (6th Cir. 2011) (quoting *Ashcroft*, 556 U.S. at 678) (internal quotations and emphasis omitted). District Courts "have no obligation to act as counsel or paralegal" to pro se litigants. *Pliler v. Ford*, 542 U.S. 225, 231 (2004). District Courts are also not "required to create" a pro se litigant's claim for him. *Payne v. Secretary of Treasury*, 73 Fed. Appx. 836, 837 (6th Cir. 2003).

**III. Proposed Conclusions of Law**

*A. Standing of Plaintiff Hunter*

9

First, Defendants assert that Plaintiff Hunter does not have standing to bring the instant claims because she has not asserted any violation of her legal rights but instead seeks to vindicate Plaintiff Freeman's legal rights. Defendants argue that Plaintiff Hunter's claims must be dismissed as a matter of law pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. As standing is a "threshold question in every federal case," *Warth v. Seldin*, 422 U.S. 490, 498 (1975), the Court will address this issue as to Plaintiff Hunter at the outset.

The requirement of standing limits federal court jurisdiction to actual cases and controversies so that the judicial process is not transformed into "a vehicle for the vindication of the value interests of concerned bystanders." *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 473 (1982). To satisfy the standing requirement of Article III of the United States Constitution, "a plaintiff must have suffered some actual or threatened injury due to the alleged conduct of the defendant; the injury must be 'fairly traceable' to the challenged action; and there must be a substantial likelihood that the relief requested will redress or prevent the plaintiff's injury." *Coal Operators and Assoc., Inc. v. Babbitt*, 291 F.3d 912 (6th Cir. 2002) (citing *Valley Forge*, 454 U.S. at 473). Thus, "the 'irreducible minimum' constitutional requirements for standing are proof of injury in fact, causation, and redressability." *Id.* A plaintiff bears the burden of demonstrating standing and must plead its components with specificity. *Id.*

In the instant case, Plaintiff Hunter's Complaint alleges two grievances: (1) the denial of Plaintiff Freeman's housing application; and (2) her humiliation during the process of applying for Plaintiff Freeman's government-subsidized housing. With respect to the denial of Plaintiff Freeman's housing application, Plaintiff Hunter has not plead any injury in fact that she has suffered. Specifically, Plaintiff Hunter has not alleged that she has been denied any of her rights to

10

government-subsidized housing. In fact, the Amended Complaint does not contain any reference to Plaintiff Hunter's attempts to secure her own government-subsidized housing. Instead, Plaintiff Hunter alleges that Plaintiff Freeman's application has been denied and that, as such, she cannot live with him in his government-subsidized housing. Yet this is not sufficient to plead with specificity that she has suffered any violation of her rights pursuant to any law, and absent such pleading; Plaintiff Hunter cannot demonstrate that the denial of Plaintiff Freeman's housing application constitutes an injury in fact as to her. The Supreme Court has made clear that Plaintiff Freeman cannot attempt to vindicate her value interest in Plaintiff Freeman's housing in federal court as a concerned bystander.

With respect to Plaintiff Hunter's alleged humiliation, Plaintiff Hunter has not plead any legal violation that she has suffered due to the MHA employees' alleged rudeness or disrespect towards her in the consideration of Plaintiff Freeman's housing application. An allegation of humiliation is insufficient to provide Defendants with fair notice of the basis of her claim. Thus, Plaintiff Hunter has failed to plead with specificity how this alleged conduct by Defendants Lipscomb, Sullivan, and Fisher rises to the level of a injury in fact sufficient to establish standing.

Accordingly, the Magistrate Judge recommends that the District Court conclude that Plaintiff Hunter's claims fail to meet the threshold requirement of standing and that Plaintiff Hunter's claims against Defendants Lipscomb, Sullivan, and Fisher be dismissed as a matter of law.

### *B. Plaintiff Freeman's Claims*

Next, Defendants assert that Plaintiff Freeman's allegations fail to state a claim upon which relief may be granted and must be dismissed as a matter of law pursuant to Rule 12(b)(6). Plaintiff Freeman's claims are as follows: (1) that his government-subsidized housing application was denied

11

on an illegal basis because he sought to live with his girlfriend, Plaintiff Hunter; (2) that his housing portability paperwork was delayed as part of a conspiracy with New Horizon Apartments, which caused him to pay inflated rent; and, (3) that he was denied the installation of "grab bars" at his New Horizons Apartments to assist him with his scoliosis.

Defendants correctly argue that Plaintiff Freeman has failed to cite the legal basis for any of these allegations against Defendants Lipscomb, Hunter, and Sullivan. As the Court has already stated, while pro se litigants are entitled to a liberal construction of their pleadings, it is not the Court's obligation to either speculate about the nature of the claims asserted or create a litigant's claims for him. From this perspective, the Court will briefly address each of Plaintiff Freeman's claims.

As to Plaintiff Freeman's claim that he was denied government-subsidized housing with his girlfriend, Plaintiff Hunter, the exhibit of purported HUD Regulations to Plaintiff's Response cites various cases regarding the obligations of a public housing authority to comply with federal and state law in their eligibility determinations. Certain cases discuss whether a public housing authority's definition of family excluding unmarried parents of children is permissible and determine that this criteria is not appropriate. *See Hann v. Housing Authority of City of Eason*, 709 F. Supp. 605 (1989) (considering the legality of a public housing authority's eligibility determination under the United States Housing Act of 1937 ("USHA"), as amended, 42 U.S.C. § 1473f, and the regulations promulgated by HUD to effectuate the Act); *Worcester Housing Authority v. Massachusetts Comm'n Against Discrimination*, 406 Mass. 244 (1989) (considering the legality of a public housing authority's eligibility determination under Massachusetts state law). However, Plaintiff Freeman's exhibit does not cite any authority that a public housing authority may not

12

prohibit two adults *without children* from sharing one applicant's public housing.[11] Thus, the Magistrate Judge recommends that the District Court conclude that Plaintiff Freeman's claim that his government-subsidized housing application was denied because he insisted upon living with his girlfriend fails to state a claim upon which relief may be granted and should be dismissed as a matter of law.[12]

As to Plaintiff Freeman's claim that his paperwork was delayed for various periods, this allegation appears to be inconsistent with Plaintiff Freeman's claim that, at his initial meeting at MHA on September 7, 2006, Defendant Sullivan and Defendant Fisher informed him that his application was denied because he sought to apply with his girlfriend, Plaintiff Hunter. Further, Plaintiff Freeman alleges that MHA asked him to sign a document stating that he understood that he was waiving his right to government-subsidized housing because he insisted upon living with Plaintiff Hunter. While Plaintiff Freeman's Amended Complaint does not state whether Plaintiff signed this document or not, there are no further allegations in the Amended Complaint that Plaintiff Freeman actually applied to live on his own in public housing. Thus, as his request to cohabitate was denied and no request to live on his own is alleged to have been made, Plaintiff Freeman has

---

[11] Plaintiff Freeman's allegations that the Dakota County Community Development Agency in Eagan, Minnesota allowed he and Plaintiff Hunter to cohabitate is not relevant to the issue before the Court. Plaintiff has cited no authority that, simply because this agency considers them to be eligible, that MHA is required to make the same eligibility determination.

[12] Plaintiff Freeman's Complaint also references the effects of the denial of his government-subsidized housing on him due to his disabilities, including his "slow learner disability." However, Plaintiff Freeman's Amended Complaint does not allege any facts supporting his claim that his application was actually *denied* on the basis of his disabilities; instead, Plaintiff Freeman's Amended Complaint makes clear that he was informed that the denial was based upon his desire to cohabitate with his girlfriend but alleges that the denial impacted him more severely due to his disabilities.

failed to allege what supposed delays violated his legal rights.  Accordingly, the Magistrate Judge recommends to the District Court that Plaintiff Freeman' claim regarding delays of his paperwork fails to state a claim upon which relief may be granted and should be dismissed as a matter of law.[13]

Finally, Plaintiff Freeman argues that he requested that grab bars be installed in his apartment at New Horizon Apartments and that the denial of this request violated the law.  However, the Amended Complaint does not allege that Defendants Lipscomb, Sullivan, or Fisher or any other named Defendant had any authority over that decision.  Instead, as Plaintiff Freeman alleges, his request for government-subsidized housing was denied on or about September 7, 2006.  Thus, Plaintiff Freeman was a tenant at New Horizon Apartments, who is not a party to the instant case.  Therefore, the Magistrate Judge recommends to the District Court that Plaintiff Freeman's claim regarding the alleged denial of installation of grab bars fails to state a claim upon which relief may be granted and should be dismissed as a matter of law.

### *C. Claims Against Defendant James, Defendant Stewart, and Defendant MHA*

Finally, counsel for Defendants Lipscomb, Sullivan, and Fisher has asserted as follows: (1) that named defendants James and Stewart are not current MHA employees, and (2) that a dismissal of Plaintiff Freeman and Plaintiff Hunter's claims against Defendants Sullivan, Lipscomb, and Fisher "should operate as a dismissal against all named defendants, including MHA."

The record reflects that James, Stewart, and MHA had not been served with process upon the filing of the instant motion.  Since the filing of this motion, MHA has been served with process and has filed its own Motion to Dismiss (D.E. #43), which the Magistrate Judge will address in a

---

[13] With respect to the alleged delay from August 22, 2006 when Plaintiffs arrived in Memphis until September 7, 2006 when Plaintiffs were given an appointment with MHA, Plaintiffs have also not alleged how this delay could constitute a violation of the law.

14

separate Report and Recommendation. Further, the question of whether the claims against James and Stewart should be dismissed is not before the Court. If these Defendants are properly served, they will have the opportunity to make any Rule 12 motions that they believe are appropriate. However, at this time, the Magistrate Judge recommends to the District Court that no action be taken as to James and Stewart.

## IV. Conclusion

For the reasons set forth herein, the Magistrate Judge recommends that Plaintiff Hunter's claims against Defendants Lipscomb, Sullivan, and Fisher be dismissed as a matter of law because Plaintiff Hunter lacks standing. The Magistrate Judge recommends that Plaintiff Freeman's claims against Defendants Lipscomb, Sullivan, and Fisher be dismissed as a matter of law for failure to state a claim upon which relief may be granted.[14] Ultimately, the Magistrate Judge recommends that Defendant Lipscomb, Sullivan, and Fisher's Motion to Dismiss (D.E. #23) be GRANTED.

**DATED** this 24th day of April, 2013.

s/ Charmiane G. Claxton
CHARMIANE G. CLAXTON
UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**

---

[14] As the Magistrate Judge recommends that Plaintiff Hunter lacks standing and Plaintiff Freeman's allegations fail to state a claim upon which relief may be granted, the Magistrate Judge did not reach the issue of whether the claims against Defendants Lipscomb, Sullivan, and Fisher should be dismissed as official-capacity claims that constitute claims against MHA.