```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF TENNESSEE
                     WESTERN DIVISION
```

| | |
|---|---|
| **RICKY FREEMAN and BRENDA FAYE HUNTER,** ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | No. 11-2424 |
| **LAQUITA SULLIVAN, et al.,** ) ) | |
| Defendants. ) | |

**ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before the Court are the October 1, 2012 Motion to Dismiss filed by Defendants Regina Fisher ("Fisher"), Robert Lipscomb ("Lipscomb"), and LaQuita Sullivan ("Sullivan") (collectively, the "MHA Defendants"); the November 29, 2012 Motion to Dismiss filed by Defendants Lynn Grosso ("Grosso"), Gregory Bernard King ("King"), and Carlos Osegueda ("Osegueda") (collectively, the "Federal Defendants"); and the April 10, 2013 Motion to Dismiss filed by Defendant Memphis Housing Authority ("MHA").  (October 1 Motion, ECF No. 23); (November 29 Motion, ECF No. 33); (April 10 Motion, ECF No. 43-1.)  Plaintiffs responded to the October 1 Motion on October 12, 2012; the November 29 Motion on December 10, 2012; and the April 10 Motion on April 19, 2013.  (Resp. to Oct. 1 Motion, ECF No. 28); (Resp. to Nov. 29 Motion, ECF No. 34); (Resp. to April 10 Motion, ECF No. 44.)  On April 24, 2013,

the Magistrate Judge filed her Report and Recommendation on the October 1 Motion (Report 1, ECF No. 45), the November 29 Motion (Report 2, ECF No. 46), and the April 10 Motion (Report 3, ECF No. 47.) Plaintiffs Ricky Freeman ("Freeman") and Brenda Faye Hunter ("Hunter") (collectively, "Plaintiffs") objected on May 7, 2013. (Objections, ECF No. 48.)

In the Report on the October 1 Motion, the Magistrate Judge recommends dismissing Plaintiffs' claims against the MHA Defendants. In the Report on the November 29 Motion, the Magistrate Judge recommends dismissing Plaintiffs' claims against the Federal Defendants. In the Report on the April 10 Motion, the Magistrate Judge recommends dismissing Plaintiffs' claims against MHA. For the following reasons, the Court ADOPTS the Magistrate Judge's Reports on the October 1, November 29, and April 10 Motions and OVERRULES Plaintiffs' objections. The October 1, November 29, and April 10 Motions are GRANTED.

**I.   Facts and Procedural Background**

   **A. Plaintiffs' Allegations**

On May 27, 2011, Plaintiffs filed a pro se Complaint alleging housing discrimination in violation of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601, et seq., § 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701, et seq., and § 1437f of the United States Housing Act of 1937 (the "Housing Act"), as amended by the Housing and Community Development Act

2

of 1974, 42 U.S.C. § 1437f. (Compl., ECF No. 8.) On February 10, 2012, Plaintiffs filed a pro se Amended Complaint. (Am. Compl., ECF No. 14.)

Plaintiffs are an unmarried couple who lived in Section 8 housing in St. Paul, Minnesota, before moving to Memphis, Tennessee. When Plaintiffs moved to Memphis on August 22, 2006, they immediately scheduled a meeting with representatives of MHA to review Freeman's Section 8 portability voucher, a document that facilitates the relocation of current Section 8 renters. Before the meeting, Plaintiffs rented at the New Horizon Apartments in Memphis and paid their own expenses.

Freeman and Hunter make individual and joint allegations. Plaintiffs' joint allegations address their September 7, 2006 meeting with Sullivan and Fisher, who are employees of MHA. At the September 7 meeting, the discussion included Plaintiffs' request to cohabitate, the required paperwork for rent subsidization, and a request to install a "grab bar" in Freeman's apartment. Freeman requested a "grab bar" to accommodate his scoliosis. Lipscomb, the Executive Director of MHA, was not at the meeting.

Portions of Freeman's application for a Section 8 voucher were allegedly denied, delayed, or ignored. Plaintiffs' request to cohabitate was denied because Freeman and Hunter were not married. Plaintiffs' paperwork for rent subsidization was

3

allegedly delayed five months, which required them to pay temporarily inflated rent. Sullivan and Fisher allegedly took no action on Plaintiffs' request for a "grab bar." Plaintiffs also allege that, during the September 7 meeting, they were subjected to demeaning remarks and actions by Sullivan and Fisher, including remarks about Plaintiffs' relationship status.

Individually, Freeman alleges that Sullivan: (1) failed to allow Freeman to apply for housing with Hunter; (2) delayed processing Freeman's paperwork for five months; and (3) failed to approve the installation of a "grab bar" in Freeman's apartment bathroom. Freeman alleges that Fisher and Lipscomb delayed the paperwork for five months and failed to install reasonable accommodations to his apartment. Individually, Hunter alleges that Sullivan made demeaning and disparaging remarks during the September 7 meeting.

### B. The October 1 Motion

The MHA Defendants seek to dismiss Plaintiffs' claims as insufficiently pled and Hunter's claim for lack of standing. According to the MHA Defendants, Plaintiffs' claims are devoid of factual support and fail as a matter of law. The MHA Defendants also seek dismissal based on qualified immunity because Plaintiffs sued them in their official capacities. The MHA Defendants argue that Hunter lacks standing because she seeks to assert Freeman's rights under the Section 8 portability

4

documents, and the Constitution requires litigants to suffer an injury-in-fact. On October 12, 2012, Plaintiffs filed a response, in which they reiterate the allegations in the Amended Complaint. (Pls.' Resp. to Oct. 1 Mot., ECF No. 28.)

In recommending that Plaintiffs' claims against the MHA Defendants be dismissed, the Magistrate Judge concluded that Hunter lacked standing because she failed to allege an injury-in-fact given that the Section 8 voucher was Freeman's. (Report 1 10-11.) Considering the denial of Freeman's request to cohabitate, the Magistrate Judge concluded that Freeman failed to state a claim upon which relief could be granted because a public housing authority may "prohibit two adults <u>without children</u> from sharing one applicant's public housing." (Id. 12-13) (emphasis in original). The Magistrate Judge also concluded that Freeman's claims based on delayed paperwork and failure to install a "grab bar" were insufficiently pled. (Id. 13-14.) Freeman's allegations failed to establish that delayed paperwork violated his legal rights or that the MHA Defendants had the authority to install a "grab bar." (Id.)

### C. The November 29 Motion

The Federal Defendants, who are employees of the Department of Housing and Urban Development ("HUD"), seek dismissal based on sovereign immunity. The Federal Defendants are sued in their official capacities. They argue that, because the United States

5

is immune to suit absent consent, and because Plaintiffs fail to allege that the United States consented, their claims are foreclosed as a matter of law.

In recommending that Plaintiffs' claims be dismissed, the Magistrate Judge concluded that sovereign immunity applied. The Magistrate Judge reasoned that, because the Amended Complaint "does not specify the legal basis for their claims against the Federal Defendants," Plaintiffs "cannot bear the burden of identifying any Congressional waiver in the statute of sovereign immunity." (Report 2 9.) Absent allegations of Congressional waiver, Plaintiffs' claims failed as a matter of law.

### D. The April 10 Motion

MHA seeks to dismiss Plaintiffs' Amended Complaint because Freeman's claims are insufficiently pled and because Hunter lacks standing. MHA argues that Freeman's claims are devoid of factual support and fail as a matter of law. MHA argues that Hunter lacks standing because she seeks to assert Freeman's rights under the Section 8 portability documents, and the Constitution requires litigants to suffer an injury-in-fact.

In recommending that Plaintiffs' claims be dismissed, the Magistrate Judge concluded that Hunter lacked standing. She "has not pled any injury-in-fact that she has suffered . . . [because] the Amended Complaint has not alleged that she has been denied any of her rights to government-subsidized housing."

6

(Report 3 10.)  The Magistrate Judge also concluded that the alleged humiliation suffered by Hunter was not an injury-in-fact sufficient to establish standing.  (Id. 11.)

The Magistrate Judge recommended dismissing Freeman's claims because, although the public housing authority in Minnesota allowed Plaintiffs to cohabitate, there is no "authority that a public housing authority may not prohibit two adults without children from sharing one applicant's public housing."  (Id. 12.)  The Magistrate Judge recommended dismissing Freeman's claim based on delays in processing his paperwork and the failure to install a "grab bar" to accommodate his disability because they were insufficiently pled.  (Id. 13.) Freeman's allegations failed to establish that delayed paperwork violated his legal rights or that the Federal Defendants had the authority to install a "grab bar."  (Id.)

**II.  Jurisdiction**

The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiffs raise a federal question under the FHA, 42 U.S.C. §§ 3601, et seq., § 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701, et seq., and § 1437f of the Housing Act, as amended by the Housing and Community Development Act of 1974, 42 U.S.C. § 1437f.

**III. Standard of Review**

    **A. Motion to Dismiss**

(Report 3 10.)  The Magistrate Judge also concluded that the alleged humiliation suffered by Hunter was not an injury-in-fact sufficient to establish standing.  (Id. 11.)

The Magistrate Judge recommended dismissing Freeman's claims because, although the public housing authority in Minnesota allowed Plaintiffs to cohabitate, there is no "authority that a public housing authority may not prohibit two adults without children from sharing one applicant's public housing."  (Id. 12.)  The Magistrate Judge recommended dismissing Freeman's claim based on delays in processing his paperwork and the failure to install a "grab bar" to accommodate his disability because they were insufficiently pled.  (Id. 13.) Freeman's allegations failed to establish that delayed paperwork violated his legal rights or that the Federal Defendants had the authority to install a "grab bar."  (Id.)

**II.  Jurisdiction**

The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiffs raise a federal question under the FHA, 42 U.S.C. §§ 3601, et seq., § 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701, et seq., and § 1437f of the Housing Act, as amended by the Housing and Community Development Act of 1974, 42 U.S.C. § 1437f.

**III. Standard of Review**

    **A. Motion to Dismiss**

In addressing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff and accepts all well-pled factual allegations as true. League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007). A plaintiff can support a claim "by showing any set of facts consistent with the allegations in the complaint." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563 (2007). This standard requires more than bare assertions of legal conclusions. Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 361 (6th Cir. 2001). "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Any claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Id. (quoting Twombly, 550 U.S. at 555).

Nonetheless, a complaint must contain sufficient facts "to 'state a claim to relief that is plausible on its face'" to survive a motion to dismiss. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability

8

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949 (citation omitted). A plaintiff with no facts and "armed with nothing more than conclusions" cannot "unlock the doors of discovery." Id. at 1950.

### B. Review of the Magistrate Judge's Reports

Congress intended 28 U.S.C. § 636 to relieve the burden on the federal judiciary by permitting the assignment of district court duties to magistrate judges. See United States v. Curtis, 237 F.3d 598, 602 (6th Cir. 2001) (citing Gomez v. United States, 490 U.S. 858, 869-70 (1989)); see also Baker v. Peterson, 67 F. App'x 308, 310 (6th Cir. 2003). "A district judge must determine de novo any part of a magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(C). "'Only those specific objections to the magistrate's report . . . will be preserved for [] review.'" Carson v. Hudson, 421 F. App'x 560, 563 (6th Cir. 2011) (quoting Souter v. Jones, 395 F.3d 577, 585 (6th Cir. 2005)); see also Smith v. Detroit Fed'n of Teachers, Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).

After reviewing the evidence, the court is free to accept, reject, or modify the proposed findings or recommendations of

9

the magistrate judge. 28 U.S.C. § 636(b)(1)(C). The district court is not required to review—under a de novo or any other standard—those aspects of the report and recommendation to which no objection is made. Thomas v. Arn, 474 U.S. 140, 150 (1985). The district court should adopt the findings and rulings of the magistrate judge to which no specific objection is filed. Id. at 151.

**IV. Analysis**

**A. October 1 Motion**

Plaintiffs objected to the Magistrate Judge's recommendations in a letter dated May 1, 2013, which was filed on May 7, 2013. Plaintiffs' letter addresses the disposition of the October 1, November 29, and April 10 Motions. Plaintiffs object to portions of the Reports that are based on evidence "stating [the] rules and regulations by the U.S. Department of Housing and Urban Development, and the incorrect rules and regulations by the Memphis Housing Authority." (Objections 2.) The Court understands Plaintiffs' objection to be an argument based on the alleged incongruence between MHA and HUD regulations. For purposes of the October 1 Motion, Plaintiffs' objection addresses the Magistrate Judge's conclusion that differences between MHA and HUD regulations do not violate Freeman's rights because MHA acted within its authority in

10

denying a housing voucher to an unmarried couple without children.

Plaintiffs have not objected on additional grounds. The Court ADOPTS those portions of the Magistrate Judge's Report on the October 1 Motion to which Plaintiffs have not objected. "[M]aking some objections but failing to raise others will not preserve all the objections a party may have." Smith, 828 F.2d at 1373. The Court's de novo review is limited to whether federal law requires that unmarried adults without children be provided housing accommodations.

Section 8 of the Housing Act, as amended by the Housing and Community Development Act of 1974, 42 U.S.C. § 1437f, is a rental subsidy plan under which owners of private housing receive payments on behalf of low-income tenants. See Baker v. Cincinnati Metropolitan Housing Authority, 675 F.2d 836, 837 (6th Cir. 1982). The funds, although released by HUD, are disbursed by Public Housing Agencies ("PHAs"). Id. at 838. PHAs receive funds after executing annual contributions contracts with HUD, for which the PHA must file an administrative plan that specifies the criteria by which eligibility and assistance priority will be determined. See 42 U.S.C. § 1437f(b)(1) ("The Secretary is authorized to enter into annual contributions contracts with public housing agencies pursuant to which such agencies may enter into contracts to make

11

assistance payments to owners of existing dwelling units in accordance with this section.").

Section 1437 promotes three overarching goals: (1) to assist "States and political subdivisions of States to remedy the unsafe housing conditions" and the shortage of "decent and safe dwellings" for low-income families; (2) "to assist states and political subdivisions of States to address the shortage of housing affordable to low-income families"; and (3) "to vest in public housing agencies that perform well, the maximum amount of responsibility and flexibility in program administration, with appropriate accountability to public housing residents, localities, and the general public."  42 U.S.C. § 1427(a)(1)(A)-(C); see also Bakos v. Flint Housing Com'n, 746 F.2d 1179, 1180 (6th Cir. 1984) ("Section 8 is designed to provide safe, sanitary and decent housing to low-income families.").

A prospective applicant for Section 8 benefits must apply for a Certificate of Family Participation, in which the applicant must establish family status and meet low-income requirements.  See Bakos, 746 F.2d at 1180.  "In addition, the application must satisfy any criteria promulgated by the local PHA, provided that these additional criteria are reasonably related to the objectives of the Section 8 program and are approved by HUD."  Id. (citations omitted).  MHA is a local PHA.

12

Plaintiffs' "family status" is the relevant issue in this appeal. Plaintiffs argue that MHA's definition of "family" is not reasonably related to the objectives of the Housing Act. Stated differently, Plaintiffs argue that MHA's definition of family differs so fundamentally from the definition applied by HUD that it deprives them of their rights under the Housing Act.

In deciding family status, MHA's criteria permit an applicant to add persons to a household in the event of: (1) birth, (2) marriage, (3) adoption, (4) the need for a live-in aide limited to a person providing care, and (5) emergencies. (ECF No. 44-1.)[1] HUD's definition of a family, which adopts the definition used in the Housing Choice Voucher Program, 24 C.F.R. § 982.201, states that a family "may be a single person or a group of persons" or "a group of persons consisting of two or more elderly persons living together." See also 24 C.F.R. § 5.403 (family "may include two or more persons with disabilities

---

[1] Plaintiffs do not attach the MHA and HUD regulations to the Amended Complaint, although they reference differences between them. (Am. Compl. ¶ 2.) Plaintiffs attach MHA and HUD regulations to their Responses to the October 1 and April 10 Motions. (See ECF Nos. 32, 44.) The Court "retains the discretion to consider or exclude [] extrinsic evidence presented with a Rule 12(b) motion." Notredan, LLC v. Old Republic Exch. Facilitator Co., No. 11-2987-STA-tmp, 2012 U.S. Dist. LEXIS 48976, at *13 (W.D. Tenn. Apr. 6, 2012). When a complaint explicitly cites documents that are not attached, courts may consider those extrinsic materials if they are central to plaintiff's claims. See id.; see also Duferco Steel v. M/V Kalisti, 121 F.3d 321, 324 n.3 (7th Cir. 1997) ("Documents referred to in, but not attached to, a plaintiff's complaint that are central to its claim may be considered in ruling on a Rule 12(b)(6) motion."). The documents are considered part of the pleadings "for all purposes." Fed. R. Civ. P. 10(c). In the context of a 12(b)(6) motion, "all purposes" means treating the facts contained in the exhibit as true. Jones v. City of Cincinnati, 521 F.3d 555, 561 (6th Cir. 2008). Because the MHA and HUD regulations are central to Plaintiffs' claims, the Court will consider them in deciding Defendants' Motions.

living together, or one or more persons with disabilities living with one or more live-in aides.").

Differences between PHA and HUD regulations are not enough, absent a showing of an unreasonable relationship between local and federal regulations, to state a claim under the Housing Act. The statutory framework contemplates the possibility of differences between local and federal regulations, going so far as to state that "the policy of the United States . . . [is] to vest in local public housing agencies the maximum amount of responsibility in the administration of their housing programs." See 42 U.S.C. § 1437. A "maximum amount of responsibility" entails, not only day-to-day operations, but also the strategic formulation of policies and regulations designed to meet programmatic aims while conserving public resources. Requiring a plaintiff to show an unreasonable relationship between PHA regulations and the underlying goals of the Housing Act maximizes the deference given to PHAs. The desire for deference arises from Congress' intent to facilitate the provision of low-income housing through local authorities, which are more responsive to community needs.

Conditioning the expansion of an applicant's household on marital status is reasonably related to the goals of the Housing Act. Congress required PHAs to exercise their authority "consistent with the objects" of the Housing Act, which means

implementing objectives that advance the provision of low-income housing. Requiring a marital relationship in circumstances not involving children establishes a clear criterion that serves multiple interests consistent with the Housing Act, including the avoidance of fraudulent applications and the limitation of scarce public resources to legally established family relationships.

HUD is required by law to approve regulations established by PHAs, and Plaintiffs do not allege that HUD failed to approve, or otherwise disagreed with, MHA's regulations. HUD's approval of regulations that differ from its own should be afforded deference. Baker, 675 F.2d at 840 ("[A] federal agency's interpretation of its own governing regulations is entitled to deference."). Because MHA's regulations are reasonably related to HUD's, and HUD has not disapproved them, Plaintiffs have failed to state a claim upon which relief can be granted.

Plaintiffs rely on Hann v. Housing Authority of City of Easton, 709 F. Supp. 605 (E.D. Pa. 1989), in which a district court invalidated a PHA's decision to deny an application to cohabitate brought by the unmarried parents of three children. The PHA had denied the plaintiff's application to advance a "traditional family requirement," a rationale the district court found unpersuasive. The court concluded that unmarried couples

15

with children were entitled to family status because "couples with children can often create a positive family situation when unmarried." Id. at 610. Denying the plaintiffs' application because the parents refused to get a marriage certificate produced an unjust result that undermined the purpose of the Housing Act, "which is to shelter the poor." Id.

Hann is distinguishable. The plaintiffs were denied family status because they were unmarried, despite being in a stable relationship that had produced three children. Id. The court reasoned that denying family status under those circumstances undermined the Housing Act, not because of the plaintiffs' marital status, but because it "would be a bizarre world where the refusal of the parents to get a marriage certificate condemns the children to a life of homelessness." Id. Plaintiffs do not have children. The policy underlying the decision in Hann does not apply.

Hann also disapproved of the PHA's criteria insofar as they limited eligibility to "traditional families with married parents." Id. at 608. Nothing in the record suggests that MHA's criteria advance a moral agenda. A fair reading of MHA's policy would permit cohabitation for unmarried caregivers and in cases of emergency. Absent the need for a caregiver or an emergency, restricting cohabitation by unmarried adults without children deters fraudulent applications, a policy cited by Hann

16

as reasonable. See id. (citing James v. New York City Housing Authority, 622 F. Supp. 1356 (S.D.N.Y. 1985) ("[A] good reason for their eligibility requirement [was] avoidance of fraud.")). MHA's decision not to approve Plaintiffs' request must be given deference.

For the foregoing reasons, Plaintiffs' objection is OVERRULED. The Court ADOPTS the Report on the October 1 Motion.

### B. The November 29 Motion

The Magistrate Judge's Report on the November 29 Motion recommends dismissing Plaintiffs' claim against the Federal Defendants on the basis of sovereign immunity. Plaintiffs do not object to that recommendation. Their objection rests on the difference between MHA and HUD regulations. The Magistrate Judge's Report on the November 29 Motion does not rely on MHA or HUD regulations. Because Plaintiffs have not objected to the Magistrate Judge's recommendation based on sovereign immunity, the Court ADOPTS the Report on the November 29 Motion.

### C. The April 10 Motion

Plaintiffs object to the Magistrate Judge's Report on the April 10 Motion on the ground that differences between MHA and HUD regulations violate their rights. Plaintiffs do not object on additional grounds. Plaintiffs' rights are not violated by differences between MHA and HUD regulations. The Court

17

OVERRULES Plaintiffs' objection and ADOPTS the Magistrate Judge's Report on the April 10 Motion.

**V. Conclusion**

Because Plaintiffs have failed to state a claim, their objections are OVERRULED and the Court ADOPTS the Magistrate Judge's Reports on the October 1, November 29, and April 10 Motions. Defendants' Motions to Dismiss are GRANTED. Plaintiffs' Amended Complaint is DISMISSED.

So ordered this <u>17th</u> day of June, 2013.

<u>s/ Samuel H. Mays, Jr.</u>　　<br>
SAMUEL H. MAYS, JR.<br>
UNITED STATES DISTRICT JUDGE